```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JAMES THOMPSON, et. al.                  :
Plaintiff,                               :    CIVIL ACTION NO:
                                         :    3:14-CV-00259-WWE
v.                                       :
                                         :
                                         :
NATIONAL UNION FIRE INSURANCE            :
COMPANY OF PITTSBURGH, PA.,              :
Defendant,                               :
```

**<u>RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER OR IN THE ALTERNATIVE TO STAY DISCOVERY [DOC. #41]</u>**

Pending before the Court is the motion of defendant National Union Fire Insurance Company of Pittsburgh, PA. ("defendant") for protective order, or in the alternative to stay discovery. [Doc. #41]. The Court held a telephone conference on February 17, 2015, addressing the issues raised in the motion for protective order, as well as other discovery concerns. Counsel for defendant and the seventy-seven plaintiffs participated. For the reasons articulated below, the Court **GRANTS in part and DENIES in part** defendant's motion for protective order, and **DENIES** defendant's alternative request to stay discovery. [Doc. #41].

**A.    <u>BACKGROUND</u>**

Plaintiffs bring this breach of contract action after obtaining stipulated judgments in ten lawsuits stemming from a February 7, 2010 explosion at the construction site of the Kleen Energy Systems, LLC power plant in Middletown, Connecticut ("Kleen Energy Project"). Plaintiffs sue defendant under Connecticut's direct action statute as assignees of Bluewater Energy Solutions, Inc. ("Bluewater"), one of the parties against

1

whom plaintiffs obtained the February 7, 2010 stipulated judgments. Plaintiffs seek to recover under a Commercial Umbrella Liability Policy (No. BE080779049) issued by defendant to Bluewater for the policy period of February 3, 2010 to February 2, 2011.  ("National Union Policy").

Defendant has filed a motion for summary judgment arguing that as a matter of law, the National Union Policy does not provide liability coverage arising out of the Kleen Energy Project. [Doc. #36]. Specifically, defendant contends that the policy excludes coverage for any liability arising from a project insured under a "wrap-up" or similar plan, and that the Kleen Energy Project was insured by a wrap-up plan.

**B.    LEGAL STANDARD**

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Notwithstanding the breadth of the discovery rules, the district courts are afforded discretion under Rule 26(c) to issue protective orders limiting the scope of discovery. Dove v. Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("[t]he grant and nature of protection is singularly within the discretion of the district court[…]"). When the party seeking the protective order demonstrates good cause, the court "may make any order which justice requires to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including […] that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." <u>Chamberlain v. Farmington Sav. Bank</u>, 247 F.R.D. 288, 289 (D. Conn. Nov. 30, 2007) (citing <u>Blankenship v. Hearst Corp.</u>, 519 F.2d 418, 429 (9th Cir. 1975)).

**C.   DISCUSSION**

The present dispute involves plaintiffs' discovery requests dated August 22, 2014, which generally seek information concerning the meaning of the term "wrap-up." Defendant argues that the majority of these requests are generally irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. During the Court's February 17, 2015 telephone conference, plaintiffs' counsel represented that plaintiffs have revised their requests as reflected in his letter dated December 11, 2014, and only seek the information requested therein. [Doc. 341-6]. Plaintiffs' counsel further argued that the information sought falls within the ambit of Rule 26 in light of the amended complaint's allegations.[1]

During the February 17, 2015 telephone conference, plaintiffs conceded that Georgia law will apply to the interpretation of the National Union Policy. The law of Georgia dictates that:

---

[1] For example, the Amended Complaint alleges that defendant's "arbitrary interpretation of its ambiguous, unclear, and undefined policy exclusion language in Endorsement 7 [i.e., language implicating the wrap-up or similar rating plan] constitutes a breach of its contract to provide coverage to Bluewater for covered occurrences." [Doc. #25, ¶10 (brackets added)].

3

> Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied. The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide.

MedAssets, Inc. v. Federal Insurance. Co., 705 F. Supp. 2d 1368, 1373-74 (N.D. Ga. 2010) (quoting Ins. Co. of Penn. v. APAC-Se., Inc., 297 Ga. App. 553, 557, 677 S.E.2d 734, 738 (2009)). Bearing this in mind, and the parties' positions as further argued during the February 17, 2015 telephone conference, the Court turns to the present dispute.[2]

### *1. Interrogatories and Document Requests 1-4*

Plaintiffs' first four interrogatories request defendant to:

> Identify all "policy forms" and "endorsements" comprising "umbrella liability insurance", within the meaning given those terms by the International Risk and Insurance Institute's glossary of terms, that would furnish coverage for the same or similar losses as the Policy, and which include provisions relating to, making reference to, defining, or otherwise giving meaning to terms: "wrap-up"; "rating plan"; "CCIP"; or "OCIP" that You have submitted to any Insurance Commission in the State of Georgia[, Connecticut, New York, or Pennsylvania][3] during the period beginning January 1, 2000 until the present time.

[Doc. #41-6]. Requests for production 1 through 4 seek the documents identified in interrogatories 1 through 4. [Id.].

---

[2] The Court further notes that the present dispute implicates a classic "chicken and egg" scenario. Defendant argues that interpretation of the policy will come from the clear and unambiguous terms of the contract itself, and therefore no extrinsic discovery is warranted before resolution of the summary judgment motion. On the other hand, plaintiffs argue that they require discovery to further argue that the policy language at issue is ambiguous.

[3] Interrogatories 1 through 4 request information for each separate state listed.

4

Defendants object to these requests because they "seek documents that have no bearing on coverage under the specific National Union Policy here." [Doc. #41-2, 7]. Defendant also argues that the information sought is already accessible to plaintiffs, as demonstrated by the documents purportedly submitted to the Georgia Insurance Commission attached to the amended complaint. [Id. at 6].

In light of the allegations in the Amended Complaint[4] and the law applicable to the interpretation of the National Union Policy, at this time the Court will only require defendant to answer interrogatories 1 and 4 and produce documents responsive to document requests 1 and 4. However, the Court finds that the requested timeframe is over broad and will therefore limit responses to the time period of January 1, 2005 through December 31, 2013. On the record before it, the Court does not see the relevance of documents submitted to the insurance commissions of Connecticut or New York. Therefore, defendant's motion for protective order is GRANTED in part and DENIED in part as to interrogatories and document requests 1-4.

### 2. *Interrogatory and Document Request 6*

Plaintiffs' sixth interrogatory requests defendant to, "Identify all Underwriters' Files in Your possession on or before the date of the Claim, that pertain to Policy coverage or Policy endorsement number 7." [Doc. #41-6]. Request for production 6 seeks the documents identified in response to

---

[4] Defendant is a corporation organized under the law of the State of Pennsylvania. Although it operates as a subsidiary of AIG, which transacts business in Connecticut and maintains an address in New York, the Court is not compelled to order production of documents relating to these states. The

interrogatory 6. [Id.]. Defendant argues that the documents and information sought are not relevant or likely to lead to the discovery of admissible evidence on the claims and defenses in this matter. Defendant also argues that the documents sought contain sensitive information and documents and communications protected by the attorney-client privilege and/or work product doctrine.

Defendant cites to a string of district court cases for the position that underwriting files are not relevant to policy disputes. For example, defendant quotes the case of Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691 (S.D. Fla. 2007), for the proposition that, "Although such documents [underwriting files] are not privileged, they are irrelevant to the determination of coverage and Plaintiff's breach of contract claim." However, defendant fails to recognize that this case explicitly notes that in breach of contract claims, underwriting files are "only discoverable when the contract terms are ambiguous." Id. at 702 (citing Champion Int'l Corp. v. Liberty Mut. Ins. Co., 129 F.R.D. 63 (S.D.N.Y. 1990)). The Milinazzo court ultimately found that plaintiff's request for the complete underwriting files was irrelevant, in part because plaintiff did not allege an ambiguity in the contract language. Milinazzo, 647 F.R.D. at 702-03. Similarly, Defendants also cite to National Union Fire Ins. Co. v. Mead Johnson & Co., No. 3:11-CV00015-RLY-WGH, 2014 WL 931947, at *3 (S.D. Ind. March 10, 2014) as "finding that the entire underwriting file is not relevant to the meaning of 'personal and advertising injury' and would not lead to the

6

discovery of admissible evidence." Again, however, defendant fails to acknowledge that this ruling was premised on the district court's finding that the policy language setting forth coverage for advertising injury was unambiguous. Id. Here, by contrast, plaintiffs have alleged ambiguity in the National Union Policy language and there has been no determination concerning whether the language at issue is unambiguous.

"Although the interpretation of an insurance policy is a legal question, an insured is entitled to explore what risks the insurer expects to cover in the policy." Silgan Containers v. National Union Fire Ins., No. C 09-05971 RS (LB), 2010 WL 5387748, at *4 (N.D. Cal. Dec. 21, 2010) (citing Pentair Water Treatment (OH) Co. v. Continental Ins. Co., No. C 08-6304, 2009 WL 3817600, at *4 (S.D.N.Y. Nov. 16, 2009) (internal citation omitted)). In that regard, "The underwriting file is relevant to determining the risks that National Union expected to cover in the policy, how it interpreted the various policy terms, and whether the terms of the policy are ambiguous in the first instance." Id.; see also Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co., 297 F.R.D. 22, 29-30 (D. Conn. 2014) (ordering defendant to respond to discovery requests regarding underwriting and contract term construction).

Therefore, in light of the claims and defenses at issue in this case, the Court will require defendant to answer interrogatory 6, as modified by the Court: Identify all Underwriters' Files in Your possession from January 1, 2005 through the date of the Claim (as defined in plaintiffs'

interrogatories), that relate to the interpretation of the policy exclusion language in Endorsement 7. The Court will also require defendant to produce any non-privileged documents responsive to document request 6. Finally, the Court notes "that defendant's argument, that extrinsic evidence of the unambiguous insurance contract language is not admissible - does not change this result." Seligan Containers, 2010 WL 5387748, at *8. Indeed, "whether or not the contract is ambiguous is not the inquiry at the discovery stage. National Union may be right that extrinsic evidence would be inadmissible at trial, but that is not the standard that the court uses to evaluate relevancy for discovery." Id. at *9 (citing Nestle Foods Corp. v. Aetna Casualty and Surety Co., 135 F.R.D. 101, 104-05 (D. N.J. 1990)).

To the extent defendant seeks the entry of a protective order limiting the use of its underwriting files because they contain confidential and proprietary information, the parties shall endeavor to agree on a proposed protective order. If the parties agree, they may submit a proposed protective order for the Court's consideration. If the parties are unable to agree, then they may contact the Court for a telephone conference.

Accordingly, for the reasons stated, defendant's motion for protective order is GRANTED in part and DENIED in part as to interrogatory and document request 6.

### 3. Interrogatory 12 and Document Requests 7-10

Plaintiffs' twelfth interrogatory requests defendant to, "Identify Your managers, underwriters, executives, officers, directors [or] other persons in Your organization that oversee,

8

supervise, or have communicated with Chartis Claims, Inc. or any other person in relation to the Claim or denial of coverage under the policy." [Doc. #41-6]. Defendant objects to this interrogatory on the grounds that it is extremely broad and not reasonably limited in scope. The Court agrees that this interrogatory as phrased is over broad in both temporal and substantive scope, and GRANTS defendant's motion for protective order as to Interrogatory 12 in its current form.

Document requests 7 through 9 request defendant to, "Produce the name, job title, current address, telephone number and email address of each person identified in Your Response to Interrogatory" 10, 11, and 12, respectively. Defendant argues that these requests impermissibly seek a narrative response. The Court agrees that document requests 7 through 9 does not call for identification or production of documents, but rather a narrative response consistent with an interrogatory. Accordingly, the Court GRANTS defendant's motion for protective order with respect to document requests 7 through 9 in their current form.

Document request 10 seeks the production of "all documents in your possession relating to: (i) coverage under the policy; or (ii) the Claim that were produced, received or transmitted by the persons identified in Interrogatory 12." Defendant again asserts that this request is "extremely broad" and seeks all such documents without regard to the claims or defenses in this case. Again, the Court agrees that request 10 is overbroad in both temporal and substantive scope. Indeed, not only does the

request as phrased implicate the production of a broad swath of documents, but it undoubtedly encompasses material protected by the attorney-client privilege and/or work product doctrine. Rather than requiring a response to this document request, the Court will order defendant to produce for the time period of January 1, 2005 through December 31, 2013, any non-privileged documents that relate to the interpretation of the policy exclusion language in Endorsement 7 and how this language was applied to the claim at issue. Accordingly, on the record before it, the Court GRANTS in part and DENIES in part defendant's motion for protective order as to document request 10.

D.  **CONCLUSION**

Accordingly, defendant's motion for protective order [Doc. #41] is **GRANTED in part and DENIED in part**. Defendant's motion to stay discovery is **DENIED**. Defendant will provide the discovery ordered within thirty (30) days of this ruling.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 23rd day of February 2015.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE